UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :

SUSAN SCHUTZ and LEONARD SCHUTZ,       :

                                    :                12 Civ. 9459 (PAE)
                          Plaintiffs,       :

                                    :              <u>OPINION & ORDER</u>
                   -v-                    :

                                    :

KAGAN LUBIC LEPPER FINKELSTEIN & GOLD, LLP,:
JOSEPH G. COLBERT, ESQ., and JESSE P.        :
SCHWARTZ, ESQ.,                        :

                                    :

                          Defendants.      :

                                    :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      In this diversity action, plaintiffs Susan Schutz and Leonard Schutz (collectively,

"plaintiffs" or "the Schutzes") bring suit against the law firm Kagan Lubic Lepper Finkelstein &

Gold, LLP ("KLLFG"), and its lawyers Joseph G. Colbert, Esq., and Jesse P. Schwartz, Esq.

(collectively, "defendants") for alleged breaches arising out of defendants' legal representation

of them.  In essence, the Schutzes allege that defendants, who also represented the board and

management company of the condominium in which the Schutzes owned a unit, took various

actions adverse to the Schutzes' interests and beneficial to those other clients.  On this basis, the

Schutzes raise claims of, *inter alia*, legal malpractice and breach of contract.  They seek money

damages and declaratory relief, including to prohibit defendants from further representing the

board and its management company, Veritas Management Company ("Veritas").

      Defendants move to dismiss the complaint, pursuant to Federal Rule of Civil Procedure

12(b)(6).  For the reasons that follow, defendants' motion is granted.

## I.     Facts[1]

In November 2004, the Schutzes, residents of South Carolina, purchased a newly built

condominium unit in the Danielle Condominium building, which is located at 3800 Blackstone

Avenue in the Bronx, New York.  First Amended Complaint ("FAC") ¶¶ 2–3, 13.  They allege

that their unit, and in fact the entire building, experienced severe water infiltration due to the

building's defective construction.  *Id.* ¶ 15.

In or around September 2009, the Board of Managers of the Danielle Condominium (the

"Board") and individual unit owners in the building retained defendants[2] to represent them in

pursuing claims against the building's owner, sponsor, developer, construction company, and

architect—Hudson View Construction, Inc. ("Hudson View"), 3274 Blackstone LLC ("3274"),

Hal A. Dorfman ("Dorfman"), Meltzer/Mandl Architects, P.C. ("Meltzer/Mandl"), and H.S.C.

Management Corp. ("H.S.C.") (collectively, the "building defendants").  *Id.* ¶¶ 6, 16.  In a

written engagement agreement into which these clients and defendants entered on August 31,

2009, the parties recited that, because a lawsuit previously commenced by the Board had sought

recovery for damages only to the common elements of the building, to recover for damage to

---

[1] The facts as related are drawn from the First Amended Complaint ("FAC"), Dkt. 11, and the
Declaration of Eric D. Mercurio ("Mercurio Decl."), Dkt. 13, and attached exhibits A–D.  In
reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations set
forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *See,
e.g.*, *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.2d 309, 311 (2d Cir. 2012); *Holmes v. Grubman*,
568 F.2d 329, 335 (2d Cir. 2009); *Chambers v. Time Warner, Inc.*, 282 F.2d 147, 152 (2d Cir.
2002).  The Court may consider Exhibits A–D as documents incorporated by reference into the
complaint or "integral" thereto.  *See Chambers*, 262 F.3d at 152–53 (citation omitted).

[2] KLLFG is a domestic limited liability partnership specializing in condominium, construction,
and real estate law, with its principal place of business in New York County.  FAC ¶ 4.  Colbert
is an attorney employed as a partner by KFLLG during the relevant time period.  *Id.* ¶ 7.
Schwartz is an attorney employed by KFLLG during the same period.  *Id.* ¶ 9.  Both attorneys
allegedly rendered legal services to the Schutzes and were agents of KLLFG.  *Id.* ¶¶ 8, 10.

their individual units, individual unit owners would need to bring individual claims against the building defendants (which, defendants suggested, might then be consolidated into one court action). Mercurio Decl. Ex. B. The agreement recited that the Board had already retained defendants on the Board's behalf. *Id.* It stated that defendants were then unaware of any conflicts of interest between the unit owners and the Board. But, the agreement provided, "[s]hould any conflict or differing interest arise, the Firm shall be entitled . . . to withdraw as counsel for the Unit Owners, on the one hand, and/or the Condominium, on the other. In such case, the Firm anticipates that it would elect to withdraw as counsel to the Unit Owners, and would continue to represent and protect the interests of the Condominium as a whole." *Id.*; *see also* FAC ¶ 17. The engagement agreement provided that, under that circumstance, individual unit owners would then be forced to retain separate counsel at their own expense. Mercurio Decl. Ex. B. The Schutzes signed the engagement letter on those conditions, and thereby retained defendants to pursue their individual claims. *See id.*; *see also* FAC ¶¶ 6, 16–17.

In or around October 2009, defendants initiated two lawsuits in the Supreme Court of Bronx County against the building defendants. The first lawsuit, *Board of Managers of the Danielle Condominium v. Hudson View Construction Co., Inc., et. al.*, Index No. 301882/08, brought on behalf of the Board, alleged damages arising from improper design, construction, and/or maintenance of the Danielle Building. Mercurio Decl. Ex. B. The second, *Thelma Wolf, et al. v. Hudson View Construction Co., Inc., et. al.*, Index No. 308664/09, brought on behalf of all the unit owners—including the Schutzes—made identical allegations of damage to the individual unit owners' apartments.

By June 2010, the Schutzes had terminated defendants as their counsel and had retained a new attorney—Guy Keith Vann, Esq.[3]—to represent them in the litigation against the building defendants. *See* FAC ¶ 24; Mercurio Decl. Ex. C; Dkt. 21 (Letter to Judge Paul A. Engelmayer, April 18, 2013).

In November 2010, a settlement agreement was negotiated, on behalf of the Board and the individual unit owners, with the building defendants. FAC ¶ 25. The settlement agreement was approved by a vote of the unit owners, and executed on November 4, 2010. *See* Mercurio Decl. Ex. D. However, the Schutzes, and the owners of one other unit in the building, declined to sign on to the settlement agreement, FAC ¶ 26; the Schutzes viewed that settlement as "woefully inadequate to meet the total estimated cost of repairs and damages," *id.* ¶ 25.

Significant here, as part of the settlement agreement, the Board agreed to indemnify the building defendants for all future liabilities, including the Schutzes' continuing litigation against the building defendants. *Id.* ¶¶ 27–28. The Schutzes allege that defendants recommended that the Board approve that indemnification provision, which effectively meant that any judgment obtained by the Schutzes against the building defendants would be paid for with funds contributed by all unit owners in the building.

---

[3] Defendants represent that the Schutzes retained Vann in January 2010. Def. Br. 4. Because the defendants' assertion cannot be taken as true in resolving a motion to dismiss, the Court assumes *arguendo* that Vann's retention commenced in June 2010. For the same reason, the Court notes, but does not consider in resolving the motion to dismiss, defendants' representation that the Schutzes hired another lawyer, a friend, Laura Filler, Esq., to represent them, in the period before the case settled in November 2010, and that both Vann and Filler represented the Schutzes in the settlement negotiations. *Id.*

II.     **Procedural History**

A.      **The Schutzes' Lawsuits in State Court**

The Schutzes are currently pursuing two lawsuits in the New York State Supreme Court of Bronx County.  One is the ongoing litigation against the building defendants, now captioned, *Susan Schutz & Leonard Schutz v. Hudson View Construction, Inc., et al.*, Index No. 308664/2009.  The other is against the Board and its management company, captioned *Susan Schutz & Leonard Schutz v. The Board of Managers of the Danielle Condominium & Veritas Management*, Index No. 105499/2010.  Def. Br. 5–6.

B.      **The Current Lawsuit**

The Schutzes brought this lawsuit in New York State Supreme Court in 2012.  On December 28, 2012, the defendants removed the lawsuit to this Court on the basis of diversity jurisdiction, *see* Dkt. 1, because the Schutzes are citizens of the State of South Carolina and defendants are a domestic limited liability partnership organized under the laws of the State of New York with its principal place of business in New York County, FAC ¶¶ 2, 4, and because the Schutzes have allegedly suffered more than $75,000 worth of damages, *id.* ¶ 1.

On January 22, 2013, defendants moved to dismiss the Complaint.  Dkt. 4.  On January 23, 2013, the Court issued an order giving the Schutzes 21 days to amend their complaint in response to the motion to dismiss, but advising them that no further opportunities to amend would be granted.  *See* Dkt. 7 (citing Fed. R. Civ. P. 15(a)(1)(B)).  On February 12, 2013, the Schutzes filed the FAC.  *See* Dkt. 11.  The FAC is broadly similar to the initial Complaint, with the principal differences being that it drops a claim for civil conspiracy, modifies its claim based on New York Judiciary Law § 487, and eliminates its demand for damages of at least $5 million on each cause of action.  *Compare* Dkt. 6 Ex. A, *with* FAC.

Even as amended, the FAC is a muddled document which broadly assails defendants but contains strikingly few specifics. The FAC contains causes of action for legal malpractice, breach of contract, breach of fiduciary duty, and violation of New York Judiciary Law § 487. Among various lapses, the Complaint alleges generally that defendants: (1) withheld information and advice from the unit owners, FAC ¶ 20; (2) failed to disclose conflicts of interest, *id.* ¶ 21; (3) conspired to defeat the Schutzes' proof of claim filed with the building's insurance company, *id.* ¶ 23(a); (4) withheld information from the Schutzes as to board meetings and decisions relating to the pending litigation, *id.* ¶ 23(b)–(c); (5) advised the Board not to document its meeting minutes so as to deny the Schutzes information about those meetings, *id.* ¶ 23(d); (6) advised the Board to cease mold remediation efforts in the Schutzes' unit, *id.* ¶ 23(f); (7) charged excessive fees, *id.* ¶ 23(i); and (8) falsely told the Schutzes and other unit owners that the building defendants lacked assets and insurance coverage to pay a judgment, *id.* ¶ 23(j).

The Schutzes' grievances, however, appear to center on the settlement agreement that was entered into in November 2010. The FAC alleges that defendants withheld information from the Schutzes' new counsel; misrepresented to the unit owners material terms of the settlement agreement, including the impact of the indemnification provision; and failed to disclose relevant financial information, including that fees would be assessed on unit owners pro rata as a result, apparently, of the indemnification provision. *Id.* ¶¶ 32–33. The FAC alleges that defendants were so involved in the Board's decision-making that they functioned as "*de facto* members of the Board." *Id.* ¶¶ 30, 32.[4]

---

[4] The FAC alleges that defendants continue to represent the Board and Veritas, *id.* ¶ 29, and that the Schutzes, as unit owners, continue to be charged a *pro rata* share of defendants' legal bills, *id.* ¶ 31.

In addition to money damages, the Schutzes seek a declaration that the defendants are to be responsible for reimbursing all assessments paid by the Schutzes attributable to legal fees payable to defendants, and a declaration that defendants must indemnify the Schutzes for any future assessments keyed to those fees or any settlement or judgment payable by the condominium.  *See id.* ¶¶ 96–102.

### C.    The Motion to Dismiss

On March 15, 2013, defendants moved to dismiss the FAC.  *See* Dkt. 12–14.  They argued, *inter alia*, that the FAC failed to adequately plead the proximate cause and damages elements of a legal malpractice claim, and that the FAC's other claims were deficient.

On April 16, 2013, the Court held a conference with the parties.  *See* Dkt. 16.  At that conference, the Court stayed discovery pending the resolution of the motion to dismiss, but denied the Schutzes' request for a broader stay of all proceedings in the matter until the Schutzes' pending state court actions have been resolved.

On April 19, 2013, the Schutzes submitted their opposition to the motion to dismiss.  Dkt. 22 ("Schutz Br.").  On May 3, 2013, defendants submitted their reply brief.  Dkt. 23.

On May 28, 2013, the Court heard argument on the motion to dismiss.  *See* Dkt. 24.  At argument, the Schutzes' counsel stated for the first time that plaintiffs view their lawsuit as being brought not only on their behalf, but also derivatively on behalf of the Board and other owners.[5]

## III.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

---

[5] At argument, the Schutzes referred to three cases not cited in their opposition to the motion to dismiss.  *See* Dkt. 22.  The Court gave the defendants the opportunity to address those cases; the defendants did so on May 31, 2013.  *See* Dkt. 26.

*Twombly*, 550 U.S. 544, 570 (2007).  To state a claim for relief that is facially plausible, an allegation must be "more than an unadorned, the-defendant-unlawfully-harmed me accusation"; a claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In making that determination, a court may look to the pleadings as well as to any documents integral to the complaint upon which the pleadings rely.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  A court must accept as true all well-pleaded factual allegations in the complaint, and "draw[] all inferences in the plaintiff's favor."  *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks and citation omitted).

## IV.   Discussion

### A.   Legal Malpractice Claim

#### 1.  The Schutzes' Direct Claim

"In a diversity action based on attorney malpractice, state substantive law . . . applies." *Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009) (quoting *Rubens v. Mason* (*Rubens II*), 527 F.3d 252, 254 (2d Cir. 2008)).  Under New York law, applicable here, a plaintiff bringing a claim of legal malpractice must establish: "(1) attorney negligence; (2) which is the proximate cause of a loss; *and* (3) actual damages."  *Nordwind*, 584 F.3d at 429 (emphasis in original) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006)); *see also Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 117 (2d Cir. 2002) (describing elements as "(1) a

duty, (2) a breach of the duty, and (3) proof that the actual damages were proximately caused by the breach of the duty" (*quoting Tinelli v. Redl*, 199 F.3d 603, 606 (2d Cir. 1999))).

Here, the theories of malpractice that the Schutzes articulate in the FAC are considerably less than pellucid.  The FAC instead largely consists of unspecific and conclusory claims of lapses, including generalized assertions that defendants withheld information from the Schutzes, treated Susan Schutz offensively, and "conspired" with the Board to ignore remediation and engineering advice and to breach various internal bylaws of the condominium.  *See, e.g.*, FAC ¶¶ 23(a)-(k), 33(a)-(n).  Such vague allegations are insufficient to state a claim; they are precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusations" that, the Supreme Court has held, "will not do."  *Iqbal*, 556 U.S. at 678.  In any event, these allegations—*e.g.*, withholding information, charging excessive fees, treating Susan Schutz offensively, and conspiring with the Board—by themselves do not plausibly give rise to damages remotely approaching the diversity-jurisdiction threshold of more than $75,000.  To the extent, however, that the Schutzes claim a breach of duty of a sort that could potentially generate damages approaching that threshold, the Schutzes appear to make one claim: that, in negotiating and persuading the Board, after the Schutzes had terminated defendants as their legal representatives, to enter into a settlement with the building defendants that the Schutzes contend was unfavorable to their interests, defendants breached a duty they held to the Schutzes.

This claim, however, is deficient for at least three reasons.  Specifically, as to such a theory of liability, the FAC fails to adequately allege all three elements of malpractice: breach of duty, proximate cause, and damages.

**Breach**:  As counsel, defendants owed plaintiffs a duty "to exercise the degree of skill commonly exercised by an ordinary member of the legal community," *Caires v. Siben & Siben,*

*LLP*, 2 A.D.3d 383, 384 (2d Dep't. 2003), from the date the representation began until at least the date plaintiffs discharged defendants as counsel.  Based on the materials cognizable on this motion, that representation lasted from September 2009 through June 2010.  *See* Mercurio Decl. Ex. B, C; Dkt. 21 (Letter from Scott E. Miller and Eric Mercurio (April 18, 2013)); *see also United States v. Int'l Bhd. of Teamsters*, 133 F.R.D. 99, 102 (S.D.N.Y. 1990); *Keoseian v. von Kaulbach*, 707 F. Supp. 150, 152 (S.D.N.Y. 1989) (finding attorney-client relationship based on written, executed retainer agreements).  After June 2010, defendants also undeniably owed the Schutzes, as their former clients, discrete duties, such as to respect client confidences shared during the pendency of the representation.  *See Kassis v. Teacher's Ins. & Annuity Ass'n*, 93 N.Y.2d 611, 615–16 (1999); *Cardinale v. Golinello*, 43 N.Y.2d 288, 295 (1977).

However, the Schutzes do not identify any duty *to them* that was allegedly breached by their former attorneys in the course of helping the Board negotiate a settlement with the building defendants.  The fact that defendants represented the Board (and the Board's interests) in that negotiation does not supply a basis on which the Schutzes can claim a breach of duty.  Quite the contrary:  The engagement agreement into which the Schutzes entered at the time they retained the defendants recognized that defendants were already representing the Board in the dispute between the condominium, and it expressly *permitted* the defendants to continue to represent the Board in the litigation with the building defendants after cessation of their representation of the Schutzes.  *See* Mercurio Decl. Ex. B, at 2.  That provision necessarily extended to representing the Board in the settlement process.  Notably, the FAC does not allege that the defendants, in negotiating or advising the Board as to the terms of that settlement, breached any promise made to the Schutzes or exploited any privileged information belonging to them.  Nor does the FAC allege that defendants' conduct during their representation of the Schutzes had compromised the

10

Schutzes' negotiating position.  Again to the contrary, at argument, counsel for the Schutzes conceded that defendants had not missed any deadlines or other milestones during their representation of the Schutzes.  *See* Transcript of Oral Argument (May 28, 2013) ("Arg. Tr.") 18–19.

Instead, the Schutzes' challenge is to the substance of the settlement achieved by the Board based, allegedly, on the advice and work of defendants:  that the settlement was not favorable to the Schutzes; that it favored the Board's interests over those of shareholders; and that it provided for the indemnification of the building defendants as to claims regarding the water damage made by all building unit owners, not just by those owners who signed on to the settlement.  But the challenge by the Schutzes to the terms of the settlement negotiated on behalf of the Board and accepted by the Board has nothing to do with, and as pled did not breach, defendants' legal duties *to the Schutzes*.  In negotiating and advising the Board as to the substance of the settlement agreement with the building defendants, the defendants were representing the Board.  Accordingly, any direct claim that the Schutzes may bring is against the Board, and the Schutzes have brought such an action, which is pending in state court.[6]  To the extent the Schutzes may sue defendants, such a claim would have to take the form of a derivative

[6] A party may sue directly on a theory of negligent representation by a counsel in "near-privity" with the plaintiff, meaning in a relationship sufficiently close to privity to support imposing such liability, despite the lack of actual privity.  *See Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 382 (1992); *Caprer v. Nussbaum*, 36 A.D.3d 176, 194–200 (2d Dep't 2006).  But that doctrine does not apply here, and the Schutzes do not argue that it does.  "To show 'near privity,' a plaintiff must allege that the attorney was aware that his services were used for a specific purpose, that the plaintiff relied upon those services, and that the attorney demonstrated an understanding of the plaintiff's reliance."  *Candela Ent't, Inc. v. Davis & Gilbert, LLP*, 39 Misc. 3d 1232(A), 2013 WL 2277863 (Table) (N.Y. Sup. Ct. N.Y. Cnty. 2013); *see also Prudential*, 80 N.Y.2d at 382–84; *Caprer*, 36 A.D.3d at 196 (citing *Credit Alliance Corp. v. Arthur Andersen*, 65 N.Y.2d 536, 551 (1985)).  Here, the Schutzes do not allege such reliance, and cannot plausibly do so, given that (as discussed *supra* p. 4) months before the settlement with the building defendants, they retained new counsel to represent them in the underlying litigation.

action, brought against defendants on behalf of the Board.  But absent a claim of a breach of a

duty owed directly by defendants to the Schutzes in connection with the settlement to which the

Schutzes were not a party, no direct claim for legal malpractice may lie.  *See Ocean Ships*, 315

F.3d at 117; *Tinelli*, 199 F.3d at 606.

 ***Proximate Cause***:  Even if the Schutzes' claim that defendants were negligent in their

negotiation of the settlement agreement implicated a duty the defendants held to the Schutzes,

the FAC fails to plead adequately that such negligence proximately caused the Schutzes injury.

A plaintiff claiming legal malpractice "must meet a case within a case requirement,' and must

demonstrate that a reasonable fact-finder could conclude that a 'reasonable fact-finder in the

underlying suit would have arrived at a different result but for the attorney's negligence.'"

*Rubens II*, 527 F.3d at 255 (quoting *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short

Hills, Inc.*, 10 A.D.3d 267, 272 (1st Dep't 2004)); *Rubens v. Mason* (*Rubens I*), 387 F.3d 183,

189 (2d Cir. 2004)); *see also D'Jamoos v. Griffith*, 340 F. App'x 737, 739 (2d Cir. 2009) ("'[A]

plaintiff must show that but for the defendant's negligence, . . . he would have prevailed in the

underlying action or would not have sustained any damages.'" (quoting *Allianz Ins. Co. v.

Lerner*, 416 F.3d 109, 118 (2d Cir. 2005))); *Tydings v. Greenfield, Stein & Senior, LLP*, 43

A.D.3d 680, 682 (1st Dep't 2007) ("To establish proximate cause, the plaintiff must demonstrate

that 'but for' the attorney's negligence, the plaintiff would have prevailed in the matter in

question.").

 Here, however, it is undisputed that fully five months before the conclusion of the

settlement agreement, the Schutzes retained new counsel to represent them in the lawsuit against

the building defendants.  *See* FAC ¶ 24; Mercurio Decl. Ex. C, D.  Those new counsel were the

parties responsible for looking out for the Schutzes' interests in the settlement process.  And it is

well-settled that the introduction of new counsel serves as an intervening cause in a legal malpractice claim, severing the chain of causation between the negligent actions of an attorney and a plaintiff's injuries, so long as new counsel has "sufficient opportunity to protect the plaintiffs' rights." *Perks v. Lauto & Garabedian*, 306 A.D.2d 261, 262 (2d Dep't 2003); *see also Albin v. Pearson*, 289 A.D.2d 272, 273 (2d Dep't 2001) (attorney's alleged negligence was not the proximate cause of the client's injuries, where successor counsel had three years to vindicate the client's legal rights); *Kozmol v. Law Firm of Allen L. Rothenberg*, 241 A.D.2d 484, 485–86 (2d Dep't 1997) (plaintiff clients could not prove proximate cause in a legal malpractice claim where successor counsel had 120 days to recommence a dismissed action); *cf. Marshel v. Hochberg*, 37 A.D.3d 559, 560 (2d Dep't 2007) (denying summary judgment in a legal malpractice claim because "plaintiff submitted evidence raising a triable issue of fact as to whether the scope of his subsequent counsel's duties broadly encompassed the services for which he had retained the defendants").

The decision in *Perks* is apposite here. There, the Appellate Division for the Second Department held that because plaintiffs had hired new counsel two months prior to the settlement of their claim "subsequent counsel had a sufficient opportunity to protect the plaintiffs' rights, and any negligence by the appellants was not the proximate cause of the plaintiffs' alleged damages." 306 A.D.2d at 262. Here, the settlement agreement was reached five months after the Schutzes had retained successor counsel. *See* Mercurio Decl. Ex. C, D. The Schutzes may well be dissatisfied by the outcome of the settlement process, but their interests in that process were the responsibility of successor counsel, and the FAC fails to allege concretely why negligent performance of a duty to them by the defendants here, during the settlement process, was a proximate cause of their alleged injuries.

13

Moreover, after the settlement agreement was negotiated, it was approved first by the Board and then by the other individual owners of units in the building, who overwhelmingly voted in favor of the settlement. *See* Mercurio Decl. Ex. D. These intervening acts break the chain of causation between the allegedly negligent representation of the defendants and the settlement of which the Schutzes disapprove: Had the Board or the unit owners voted down the settlement, the plaintiffs would not have incurred the injuries they allege.

***Damages***: Finally, the FAC does not adequately plead ascertainable damages. A plaintiff who brings a legal malpractice claim must show that he or she "suffered actual and ascertainable damages." *Rubens I*, 387 F.3d at 189 (citing *McCoy v. Feinman,* 99 N.Y.2d 295, 301–02 (2002)); *see also Russo v. Feder, Kaszovitz, Isaacson, Weber, Skala & Bass, LLP*, 301 A.D.2d 63, 67 (1st Dep't 2002) ("[T]o survive dismissal, the complaint must show that but for counsel's alleged malpractice, the plaintiff would not have sustained some *ascertainable* damages." (emphasis added)). To be sure, a "pleading need only state allegations from which damages attributable to the defendant's conduct may be reasonably inferred." *Fielding v. Kupferman*, 65 A.D.3d 437, 442 (1st Dep't 2009) (quoting *Lappin v. Greenberg*, 34 A.D.3d 277, 279 (1st Dep't 2006)). But even at the pleading stage, those damages must not be speculative. *See, e.g.*, *Zarin v. Reid & Priest*, 184 A.D.2d 385, 388 (1st Dep't 1992) (dismissing a legal malpractice claim because the plaintiffs' alleged damages were "too speculative and incapable of being proven with any reasonable certainty") (quoting *Brown v. Samalin & Bock, P.C.*, 168 A.D.2d 531, 532 (2d Dep't 1990)); *Oot v. Arno*, 275 A.D.2d 1023 (4th Dep't 2000) (same).

*Sevey v. Friedlander*, 83 A.D.3d 1226, 1227 (3d Dep't 2001), is instructive on this point. There, the Appellate Division affirmed a grant of summary judgment in favor of the defendant in a legal malpractice claim because the plaintiff could not specify actual damages. The plaintiff

14

alleged that the defendant had "pressured him to accept an unfavorable settlement," *id.* at 1226, and that "he would have received a more favorable result if he had gone to trial." *Id.* at 1227. But, the Appellate Division concluded, "[m]ere speculation about a loss resulting from an attorney's [alleged] poor performance is insufficient," to establish the damages element of a legal malpractice claim. *Id.* (quoting *Antokol & Coffin v. Myers*, 30 A.D.3d 843, 845 (3d Dep't 2006)) (alterations in original); *see also Albanese v. Hametz*, 4 A.D.3d 379, 380 (2d Dep't 2004) (dismissing malpractice claims that amounted to "nothing more than [plaintiffs'] dissatisfaction with the defendants' strategic choices"); *Brooklyn Law Sch. v. Great N. Ins. Co.*, 283 A.D.2d 383 (2d Dep't 2001) ("Mere speculation about a loss resulting from an attorney's alleged omission is insufficient to sustain a prima facie case of legal malpractice.").

These principles require dismissal here. The FAC alleges generally that, "but for the negligence of the defendants," the Schutzes would have:

> (a) . . . succeeded in obtaining funds to repair, remediate, and otherwise make habitable their condominium unit;
>
> (b) . . . obtained fair and adequate compensation for their damages consisting, in part, of constructive eviction, damages to their condominium unit, water intrusion and subsequent property damage, physical injury . . . the requirement of paying its pro-rata share of attorneys fees for attorneys who were of no value to plaintiffs, and were in fact working contrary to Plaintiff's interests in a patent conflict of interest.

FAC ¶ 52. But the FAC does not offer any concrete factual allegations in support of these assertions. Instead, it merely assumes that the Schutzes would have fared better had defendants conducted settlement negotiations differently. But, as the cases canvassed above reflect, such a blanket allegation is too conjectural to adequately plead actual damages for malpractice. Indeed, they are too conjectural in any context to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Because the FAC fails to allege adequately the elements of breach of duty, proximate cause, and damages so as to support a claim of legal malpractice under New York law, the Schutzes' direct claim for such malpractice is dismissed.

### 2. The Schutzes' Potential Derivative Claim

Although the owner of a unit does not have standing to sue individually "to protect his or her interest in the common elements of the condominium," a unit owner can assert a claim derivatively, on behalf of the whole condominium, to protect a shared interest. *Caprer*, 36 A.D.3d at 190. Such a "derivative action proceeds not on the basis of any individual right, but as an assertion of the interest of the entity by one or more of its owners or members when the management of the entity fails to act to protect that interest." *Id.* at 186. At argument, the Schutzes' counsel introduced the notion of their clients' bringing such a derivative action against defendants, on behalf of the Board. *See* Arg. Tr. 16–30. However, no such derivative claim is pled in, or fairly inferred from, the FAC. The malpractice claim in the FAC, therefore, cannot be sustained on this basis.

In any event, the FAC fails to allege at least one integral element of a derivative claim: It does not allege damage to shared elements of the condominium, those which the Board has a duty to protect. *See Caprer*, 36 A.D.3d at 186–91. To be sure, the settlement agreement includes a provision indemnifying the building defendants in the event of litigation between non-settling unit owners and any building defendant for damages arising from the water damage, and mandating that equitably assessed condominium fees be used to pay the agreed-to indemnification. *See* Mercurio Decl. Ex. D. Depending on the theory under which such a provision was challenged, it potentially could have been the subject of a derivative action, in that "[t]he unit owners also have a mutual interest in the 'common profits and expenses' of the

condominium, which are 'distributed among, and . . . charged to,' respectively, the owners

'according to their respective common interests.'" *Caprer*, 36 A.D.3d at 183 (quoting N.Y. Real

Prop. Law § 339–m).   However, the Schutzes do not challenge this clause based on its collective

impact.   Instead, they resist the obligation on a ground specific to them and the one other unit

owner that did not sign on to the settlement: that it is unfair for them, as non-settling unit owners,

to pay their pro-rata share of the indemnity.   That, however, is not a derivative claim in which

plaintiffs seek, on the Board's behalf, to vindicate the common interests of all unit owners.   No

derivative claim, therefore, lies here.

### B.     Breach of Contract Claim

The FAC's claim of a breach of contract fares no better.   A complaint for breach of

contract under New York law must allege: "(1) the existence of an agreement; (2) adequate

performance of the contract by the plaintiff; (3) breach of contract by the defendant; and

(4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citation omitted).   Where

the complaint alleges that "a lawyer promise[d] a specific result to his client or breache[d] an

implied promise of due care," a breach of contract claim can go forward. *Flutie Bros. v. Hayes*,

No. 04 Civ. 4187 (DAB), 2006 WL 1379594, at *7 (S.D.N.Y. May 18, 2006); *see also Schweizer

v. Mulvehill*, 93 F. Supp. 2d 376, 398 (S.D.N.Y. 2000) ("In addition to pursuing a claim based on

an implied promise to use due care, a plaintiff may also pursue a contract claim against an

attorney based on a breach of promise to obtain specific results, but only if promise [*sic*] was

expressly made.").   However, where a breach of contract claim "is nothing but a redundant

pleading of a timely malpractice claim, it should be dismissed as duplicative." *Id.* at 398; *see,

e.g.*, *Flutie Bros.*, 2006 WL 1379594, at *7; *Sage Realty Corp. v. Proskauer Rose LLP*, 251

A.D.2d 35, 38 (1st Dep't 1998); *cf. Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907,

921 (S.D.N.Y. 1997) ("[W]hether framing their claim as breach of contract or attorney malpractice, plaintiffs must demonstrate the same thing, that defendants did not perform with the appropriate level of care, and that plaintiffs suffered damages as a result.") (Sotomayor, J.).

The FAC does not make any concrete allegation of a breach of a specific or implied promise to the Schutzes, beyond to carry out the inherent duties of a lawyer. The FAC nebulously alleges that the defendants "agreed to provide specific competent and professional legal services," FAC ¶ 58, and "specifically agreed to produce and accomplish the tasks set forth in the preceding paragraph," *id.* ¶ 59. But the FAC does not allege with specificity any direct or implied promises made by the defendants as to a particular legal outcome. Nor did the engagement agreement expressly or impliedly promise any particular outcome or promise a duty of care beyond a lawyer's inherent duty to furnish competent legal representation. *See* Mercurio Decl. Ex. B. Because the FAC's contract claim is at best coextensive with its malpractice claim and asserts no independent basis for finding a breach, this claim must also be dismissed.[7]

---

[7] In their brief, the Schutzes claim a breach by defendants of their contract with the Board, arguing that the Schutzes are third-party beneficiaries of that agreement. To bring such a claim, a plaintiff must allege:

> (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [plaintiffs'] benefit, and (3) that the benefit to [plaintiff] is sufficiently immediate . . . to indicate the assumption by the contracting parties of a duty to compensate [plaintiff] if the benefit is lost.

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (quoting *Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786 (2006)); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (1983). The FAC, however, fails to allege any breach of the contract in which the Board engaged the defendants, *see* Ex. B, let alone a breach injurious to the Schutzes. Rather, the Schutzes cite only defendants' "failure to adequately represent the interests of its client, the Board of Managers," Schutz Br. 12, as a breach of the defendants' contract with the Board. That is the kind of "bare assertion" that fails to meet the standard set forth in *Twombly* and *Iqbal*, *see Iqbal*, 556 U.S. at 698; *Twombly*, 550 U.S. at 556, and one that is indisputably duplicative of any legal malpractice claim.

### C.    Breach of Fiduciary Duty

To succeed on a breach of fiduciary duty claim, a plaintiff must allege "(a) a breach by a fiduciary of obligations to another; (b) that the defendant knowingly induced or participated in the breach; and (c) that the plaintiff suffered damages as a result of the breach." *Flutie Bros.*, 2006 WL 1379594, at *8 (quoting *Gupta v. Rubin*, No. 00 Civ. 3091 (DLC), 2001 WL 59237, at *7 (S.D.N.Y. Jan. 24, 2001) (citations omitted)).  However, "New York courts have viewed a breach of fiduciary duty against an attorney as essentially a cause of action for legal malpractice" and thus appropriate for dismissal as duplicative of a timely legal malpractice claim.  *Id.* at *8; *see also Mecca v. Shang*, 258 A.D.2d 569, 570 (2d Dep't 1999) ("[T]he court did not err in dismissing Dr. Mecca's breach of fiduciary duty and fraud claims, since they arise from the same facts as his legal malpractice claim and do not allege distinct damages.").  New York courts have also "never differentiated between the standard of causation requested for a claim of legal malpractice and one for breach of fiduciary duty in the context of attorney liability." *Flutie Bros.*, 2006 WL 1379594 at *8 (quoting *Weil*, 10 A.D.3d at 271–72 (1st Dep't 2004)).  Because the FAC's breach of fiduciary duty claim arises out of the same facts and alleges the same general damages as its legal malpractice claim, it is dismissed as duplicative of that legal malpractice claim.

### D.    Judiciary Law § 487

Finally, New York Judiciary Law § 487 states than an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" is liable for treble damages.  This claim, however, only applies to a "chronic, extreme pattern of legal delinquency." *Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 260 (S.D.N.Y. 2011); *see Kaminsky v. Herrick, Feinstein LLP*, 59 A.D.3d 1, 13 (1st Dep't 2008); *Solow Mgmt. Corp.*

*v. Seltzer*, 18 A.D.3d 399, 399–400 ("Contrary to plaintiff's arguments, the complaint sets forth

but one arguable misrepresentation by defendant and accordingly does not allege a cognizable

claim under Judiciary Law § 487, which provides recourse only where there is a chronic and

extreme pattern of legal delinquency.").  Further, "the alleged deceit forming the basis of such a

cause of action, if it is not directed at a court, must occur during the course of a pending judicial

proceeding."  *Costalas v. Amalfitano*, 305 A.D.2d 202, 204 (1st Dep't 2003) (citation omitted);

*see Henry v. Brenner*, 271 A.D.2d 647, 648 (2d Dep't 2000) (affirming dismissal of a cause of

action under N.Y. Judiciary Law § 487(1) based on presentation of allegedly false time records

to plaintiff because a judicial proceeding was no longer pending).  Finally, the plaintiff must

allege damages that resulted from the defendant's deceit.  *See Kaminsky*, 59 A.D.3d at 13;

*Manna v. Ades*, 237 A.D.2d 264, 265 (2d Dep't 1997) (affirming dismissal of a claim under

Judiciary Law § 487 because plaintiff "failed to demonstrate the existence of any damages

proximately caused by a deceit allegedly perpetrated on the court").

    The FAC's claim under N.Y. Judiciary Law § 487 fails to allege any of these required

elements.  It alleges generically that the defendants' alleged misconduct took place during

ongoing litigation in the Supreme Court of Bronx County, *see* FAC ¶ 71, and that "[d]efendants

engaged in a chronic extreme pattern of behavior and legal delinquency in [their] wrongful

communications," *id.* ¶ 72, but it otherwise rests on hazy allegations of misconduct—precisely

the "labels and conclusions" and "formulaic recitation of the elements" against which *Twombly*

and *Iqbal* counsel.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  The FAC does not set

forth specific allegations to the effect that defendants engaged in a "chronic, extreme pattern of

legal delinquency"; instead, it makes sweeping but nebulous claims of illicit conspiracies

between defendants and the Board. *See* FAC ¶¶ 20, 23, 74. Nor have the Schutzes pled with

specificity any damages specifically resulting from the alleged violation of § 487.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted, with prejudice. The

Clerk of Court is directed to terminate the motions pending at docket numbers 4 and 12, and to

close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: July 2, 2013
        New York, New York

21